## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| In Re DMCA Subpoena to GoDaddy.com, LLC | ) ) ) ) | |
| JOHN DOE, | ) ) ) | |
| Movant, | ) ) | |
| v. | ) ) | Case No. 8:25-mc-319 |
| TAMARIS (GIBRALTAR) LIMITED, | ) ) ) | |
| Respondent. | ) ) | |

## OPPOSITION TO MOTION TO QUASH DMCA SUBPOENA
## TO GODADDY.COM, LLC

Respondent Tamaris (Gibraltar) Limited ("Tamaris"), by counsel, submits this Opposition to Movant John Doe's Motion to Quash DMCA Subpoena to GoDaddy.com, LLC ("GoDaddy"). This Court should deny the Motion because (i) John Doe has failed to satisfy the requirements of Local Rule 104.7, (ii) John Doe has failed to satisfy the legal standard for a motion to quash under Federal Rule of Civil Procedure 45(d)(3), (iii) John Doe seeks to prevent Tamaris from using the DMCA Subpoena to do exactly what is authorized by 17 U.S.C. § 512(h), and (iv) because the Motion is untimely—John Doe filed the Motion long after the June 16, 2025 return date.

### I.       BACKGROUND

This matter concerns a production of materials in response to a subpoena issued pursuant to the Digital Millennium Copyright Act ("DMCA").  "Congress enacted the DMCA in 1998" to update U.S. copyright law and "strengthen copyright protection in the digital age."  *Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 170–71 (2d Cir. 2020) (citation omitted).  Relevant here, one purpose

of the DMCA is to enable the identification of "copyright infringers who use the services of an internet service provider." *Cognosphere Pte. Ltd. v. X Corp.*, Case No. 23-mc-80294-PHK, 2024 WL 4227594, at *2 (N.D. Cal. Sept. 18, 2024). "[T]hus the DMCA sets forth a procedure for issuance of a subpoena to an internet 'service provider to expeditiously disclose to the copyright owner or person authorized by the copyright owner the information required by the subpoena, *notwithstanding any other provision of law* and regardless of whether the service provider responds to the notification.'" *Id.* (alterations omitted) (quoting 17 U.S.C. § 512(h)(5)); *see also* 17 U.S.C. § 512(h)(1) ("A copyright owner or a person authorized to act on the owner's behalf may request the clerk of any United States district court to issue a subpoena to a service provider for identification of an alleged infringer . . . ."). In short, the DMCA enables copyright owners and their representatives to have subpoenas issued to identify individuals and entities infringing their copyrights online so the copyright owners and/or their representatives can seek recourse for these violations of U.S. federal law. *See Cognosphere*, 2024 WL 4227594, at *2 (citation omitted); 17 U.S.C. § 512(h)(1).

That is precisely what Tamaris has sought here. Tamaris has identified domains—including casinoestelar.com and powerbet.win—currently being used to infringe its copyrights (and other intellectual property) and seeks to identify the infringer(s) so that it may take appropriate legal action to stop this wrongdoing. Accordingly, Tamaris sought the issuance of the DMCA Subpoena to enable identification of the infringer(s).

On June 2, 2025, this Court issued the DMCA Subpoena, and on June 3, 2025, Tamaris served the DMCA Subpoena on GoDaddy. *See* Exhibit A, Email Correspondence Serving GoDaddy.com, LLC with Attached Subpoena. In line with the relevant provisions of the DMCA, *see Cognosphere*, 2024 WL 4227594, at *2 (citation omitted); 17 U.S.C. § 512(h)(1), the DMCA

Subpoena requires GoDaddy to produce, among other things, "[a]ll identifying information" for certain internet domain names, including casinoestelar.com and powerbet.win, that are infringing Tamaris's copyrights and other intellectual property, Exhibit A, at 2.

GoDaddy was required to produce the requested information by June 16, 2025, but has not yet served a response to the DMCA Subpoena.

On August 1, 2025, over a month after the DMCA Subpoena's return date, John Doe moved to quash the DMCA Subpoena as to the domains casinoestelar.com and powerbet.win. *See* ECF No. 4. For the reasons discussed herein, this Court should deny the Motion.

## II.   LEGAL STANDARD

"Federal Rule of Civil Procedure 45 governs discovery of non-parties by subpoena," *Strike 3 Holdings, LLC v. Doe*, Civil No. 24-3138-BAH, 2025 WL 1068063, at *2 (D. Md. Apr. 9, 2025), including motions to quash non-party subpoenas, *see id.*; Fed. R. Civ. P. 45(d)(3). Pursuant to Rule 45, a court "must quash or modify a subpoena that: (i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden." Similarly, under the Rule, a court "may . . . quash or modify the subpoena if it requires: (i) disclosing a trade secret or other confidential research, development, or commercial information; or (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." Fed. R. Civ. P. 45(d)(3). Notably, although "district courts are afforded broad discretion in determining whether to quash a subpoena," the movant "bears the burden of proving that a subpoena merits quashing." *Malibu Media, LLC v. Doe*, Civil

No. WDQ–14–748, 2015 WL 857408, at *3 (D. Md. Feb. 26, 2015) (internal quotation marks omitted) (citations omitted).

In the context of DMCA subpoenas, courts also consider First Amendment concerns regarding disclosure of information. *See In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 876 (N.D. Cal. 2022). "A recipient of a DMCA subpoena may . . . move to quash on the basis that the subpoena would require disclosure of material protected by the First Amendment." *Id.* at 877 (citations omitted). But while "[t]he Supreme Court has recognized that the First Amendment provides protection for anonymous speech[,] . . . [t]he First Amendment does not[] . . . provide a license for copyright infringement." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 118 (2d Cir. 2010) (citations omitted). Thus, "to the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment." *Baugher v. GoDaddy.com LLC*, No. MC-19-00034-PHX-JJT, 2021 WL 4942658, at *2 (D. Ariz. Oct. 22, 2021) (citation omitted).

## III.    ARGUMENT

This Court should deny John Doe's Motion for at least four independent reasons. First, John Doe has failed to satisfy the requirements of Local Rule 104.7. Counsel for John Doe did not confer with Counsel for Tamaris prior to filing the Motion, and consequently, and Counsel for John Doe did not file the required certificate regarding the conference. Second, the Court should deny the Motion because John Doe has failed to satisfy the legal standard for a motion to quash under Federal Rule of Civil Procedure 45(d)(3). Third, the Court should deny the Motion because through the Motion, John Doe seeks to prevent Tamaris from using the DMCA Subpoena to do exactly what is authorized by 17 U.S.C. § 512(h). And fourth, the Court should deny the Motion because it is untimely—John Doe filed the Motion long after the June 16, 2025 return date.

**A. This Court Should Deny the Motion Because John Doe Has Failed to Satisfy the Requirements of Local Rule 104.7.**

Rule 104.7 requires that the parties confer before any party files a discovery motion *and* that the moving party file a certificate regarding their conference. *See* D. Md. Loc. R. 104.7. Specifically, it states:

> Counsel shall confer with one another concerning a discovery dispute and make a reasonable effort to resolve the differences between them. The Court will not consider any discovery motion unless the moving party has filed a certificate reciting (a) the date, time, and place of the discovery conference, and the names of all persons participating therein, or (b) counsel's attempts to hold such a conference without success; and (c) an itemization of the issues requiring resolution by the Court. A "reasonable effort" means more than sending an email or letter to the opposing party. It requires that the parties meet in person or by video or telephonic means for a reasonable period of time in a good faith effort to resolve the disputed matter.

*Id.* Counsel for John Doe has not satisfied the requirements of this Rule. The parties did not confer prior to the instant Motion's filing. Indeed, Counsel for John Doe did not contact Counsel for Tamaris *at all* prior to filing. Counsel for the parties have had no interactions. And given this fatal shortcoming, it is unsurprising that Counsel for John Doe has also failed to file the required certificate. *See id.* Consequently, this Court should deny the Motion. *See id.* ("The Court will not consider any discovery motion unless the moving party has filed a certificate . . . ."); *Goldstein v. FDIC-R*, Civil No. ELH–11–1604, 2013 WL 8446550, at *1 (D. Md. May 16, 2013) (denying motion to quash for failure to comply with Local Rule 104.7); *Induction Therapies, LLC v. Ingenes, LLC*, Case No. DKC-21-0604, 2023 WL 3848370, at *1 (D. Md. Mar. 21, 2023) (denying discovery motion for failure to comply with Local Rule 104.7); *Parker v. United States*, Civil Action No. JPM-16-1052, 2016 WL 7383833, at *1–2 (D. Md. Dec. 20, 2016) (denying discovery motion for failure to comply with Local Rule 104.7).

**B. The Court Should Deny the Motion Because John Doe Has Not Satisfied the Legal Standard for a Motion to Quash Under Federal Rule of Civil Procedure 45(d)(3).**

John Doe fails to make any requisite showing that the DMCA Subpoena falls under any of the categories identified in Federal Rule of Civil Procedure 45(d)(3).  Indeed, John Doe does not argue that the DMCA Subpoena does not allow a reasonable time for compliance, *see* Fed. R. Civ. P. 45(d)(3)(A)(i); that the DMCA Subpoena "requires a person to comply beyond the geographical limits specified in Rule 45(c)," Fed. R. Civ. P. 45(d)(3)(A)(ii); or that the DMCA Subpoena "subjects a person to undue burden," Fed. R. Civ. P. 45(d)(3)(A)(iii).  Nor does John Doe argue that the DMCA Subpoena should be quashed because it requires "disclosing a trade secret or other confidential research, development, or commercial information" or "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party."  Fed. R. Civ. P. 45(d)(3)(B).

At best, by asserting that "[t]he subpoena seeks highly sensitive and personally identifying information about the operators," ECF No. 4, at 1, John Doe only argues that the DMCA Subpoena should be quashed because it "requires the disclosure of privileged or other protected matter," Fed. R. Civ. P. 45(d)(3)(A)(iv).  John Doe appears to be making a First Amendment argument: that John Doe's anonymous speech should remain anonymous on First Amendment grounds.  But this argument, and therefore also John Doe's Rule 45(d)(3)(A)(iv) argument, fails because John Doe's anonymity in engaging in the infringing conduct is not protected by the First Amendment.

Neither this District nor the United States Court of Appeals for the Fourth Circuit has articulated a specific test or analysis for determining whether to quash a DMCA Subpoena based on First Amendment protections.  Nor are other federal courts uniform in their approaches.  However, multiple courts have indicated that "the inquiry consists of two steps[:] First, the party seeking the disclosure must demonstrate a prima facie case on the merits of its underlying claim.

6

Second, the court balances the need for the discovery against the First Amendment interest at stake." *E.g.*, *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 876 (N.D. Cal. 2022); *see also Baugher*, 2021 WL 4942658, at *2 (indicating "that the court must determine whether the party seeking the information under the DMCA demonstrated a *prima facie* claim of copyright infringement" and that the analysis also requires "a balancing of the need for disclosure of the requested information against the target of the subpoena's interests in protecting disclosure"). Conducting this inquiry here reveals that the First Amendment does not protect John Doe's identifying information from production.

  **i. Tamaris Has Demonstrated a Prima Facie Case on the Merits of Its Underlying Copyright Infringement Claim.**

  Tamaris has demonstrated a prima facie case on the merits of its underlying copyright infringement claim because (1) it has "show[n] ownership of the allegedly infringed material"; and (2) it has "demonstrate[d] that the alleged infringers violate at least one exclusive right granted to [Tamaris] under 17 U.S.C. § 106." *Cognosphere*, 2024 WL 4227594, at *4 (citing cases).

  To show its ownership of the infringed material, Tamaris explained in its Notice of Copyright Infringement to GoDaddy sent prior to the issuance of the DMCA Subpoena (and provided to the Court as part of its request for issuance of the DMCA Subpoena) that "Tamaris and its related companies own all rights in the copyright[-]protected content, photographs, text, images, graphics, animations, and software code associated with the PragmaticPlay gaming software applications, websites, and livestreams." Exhibit B, Decl. of David E. Weslow and Attach., at 4; *see Cognosphere*, 2024 WL 4227594, at *4 (finding the first requirement satisfied when the plaintiff plausibly alleged it owned valid copyrights for its work (citation omitted)); *Baugher*, 2021 WL 4942658, at *4 (finding that the plaintiff had alleged a prima facie claim of copyright

infringement based on their registered copyrights and non-registered copyrightable work).[1] Indeed, John Doe does not, and cannot, dispute that Tamaris's software games are entitled to copyright protection.  *See Cognosphere*, 2024 WL 4227594, at *4 (stating that "where an accused infringer does not contest ownership or registration of copyrights for a video game, allegations of infringement pertaining to specific aspects of that game are sufficient to plausibly allege ownership of a valid copyright on those specific aspects" (citation altered) (citation omitted)).

To demonstrate that copyright infringement is occurring, in the same document, Tamaris explained that the relevant domains "are utilizing unauthorized copies of legitimate Tamaris gaming software with insignificant alterations."  Exhibit B, at 4; *Cognosphere*, 2024 WL 4227594, at *6 (finding the second requirement satisfied when the plaintiff asserted that the alleged infringers posted material infringing the plaintiff's copyrights).

### ii. Tamaris's Need for the Discovery Outweighs John Doe's First Amendment Interests.

Courts consider a number of different factors in determining whether the need for discovery outweighs any First Amendment interests at stake.  In addition to whether the plaintiff has demonstrated a prima facie case of copyright infringement, some courts consider, for example, "the specificity of the discovery request, the absence of alternative means to obtain the subpoenaed information, the central need for subpoenaed information, and the expectation of privacy for the party opposing discovery."  *E.g.*, *Signature Mgmt. Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d

---

[1] Tamaris's copyright-protected work was first published outside of the United States and is therefore exempt from the copyright registration requirements of 17 U.S.C. § 411.  *See* 17 U.S.C. § 411 (referring only to works created in the United States); *Keep on Kicking Music, Inc. v. Universal Music Grp.*, 23-CV-4400 (JPO), 2025 WL 1664682, at *4 (S.D.N.Y. June 12, 2025) (explaining that "non-United States works—generally, works first published outside the United States in a foreign country that is a signatory to the Berne Convention [for the Protection of Literary and Artistic Works]—are exempt from" the registration requirements of § 411 (citation omitted)).

1145, 1158 (N.D. Cal. 2013) (citation altered) (citation omitted); *see also Sony Music Ent., Inc. v. Does 1–40*, 326 F. Supp. 2d 556, 564–65 (S.D.N.Y. 2004) (stating that the same factors are analyzed in "[c]ases evaluating subpoenas seeking identifying information from [internet service providers] regarding subscribers who are parties to litigation").  Others consider "whether the subpoena seeking the information was issued in good faith and not for any improper purposes, the information sought relates to a core claim or defense, the identifying information is directly and materially relevant to that claim or defense, and information sufficient to establish or to disprove that claim or defense is unavailable from some other source."  *E.g.*, *Cognosphere*, 2024 WL 4227594, at *3 (alterations omitted) (citation omitted); *see also Well Go USA, Inc. v. Unknown Participants in Filesharing Swarm Ident.fied by Hash: B7FEC872874D0CC9B1372ECE5ED07AD7420A3BBB*, Civil Action No. 4:12–cv–00963, 2012 WL 4387420, at *1 (S.D. Tex. Sept. 25, 2012) (similar (citations omitted)).

Here, consideration of these factors overwhelmingly supports disclosure of the information requested by the DMCA Subpoena.  Tamaris has expressly listed information it seeks: information needed to identify infringers of Tamaris's copyrights and other intellectual property.  *See* Exhibit A, at 2.  Tamaris has no means of acquiring this information—which Tamaris *needs* in order to take appropriate legal action against the infringers—from some other source.  And although John Doe may have some expectation of privacy in another context, "there is no similar expectation of privacy for copyright infringement."  *Signature Mgmt. Team, LLC*, 941 F. Supp. 2d at 1158.  Moreover, the DMCA Subpoena was issued in good faith and for a proper purpose.  *See* Exhibit B ¶ 5; *Cognosphere*, 2024 WL 4227594, at *7 (explaining that demonstration of a prima facie case of copyright infringement supported a finding that the subpoena was issued in good faith).  And the information sought relates to Tamaris's claims because it dictates against whom

9

Tamaris will assert the copyright infringement claims, making it materially relevant. *See Cognosphere*, 2024 WL 4227594, at *8 (stating that the identity of the anonymous speakers was "materially relevant, if not critical to the claim"). Accordingly, Tamaris's need for the discovery outweighs John Doe's First Amendment interests.

Consequently, to the extent John Doe seeks to quash the DMCA Subpoena because Tamaris purportedly seeks "disclosure of privileged or other protected matter," Fed. R. Civ. P. 45(d)(3)(A)(iv), this argument fails.

**C. The Court Should Deny the Motion Because Through the Motion, John Doe Seeks to Prevent Tamaris from Using the DMCA Subpoena to Do Exactly What Is Authorized by 17 U.S.C. § 512(h).**

Section 512(h) creates a mechanism through which to discover the identity of those engaged in copyright infringement via the Internet (so that legal action can be taken against them). In particular, it enables a copyright owner (or their representative) to seek disclosure of "information sufficient to identify the alleged infringer of the material described in the notification to the extent such information is available to the service provider." 17 U.S.C. § 512(h)(3). The DMCA Subpoena does just that. *See* Exhibit A, at 2 (requiring production of "[a]ll identifying information").

Critically, in arguing that the DMCA Subpoena should be quashed because it "seeks highly sensitive and personally identifying information about the operators," ECF No. 4, at 1, John Doe either fails to understand, or misstates, the very purpose for which Tamaris served the DMCA Subpoena: to identify the infringer(s) infringing Tamaris's valuable copyrights (and other intellectual property), as is expressly permitted by § 512(h), so that Tamaris can take legal action against the appropriate party or parties. *See Signature Mgmt. Team*, 941 F. Supp. 2d at 1152 ("As is clear from the title of § 512(h)—'[s]ubpoena to identify infringer'—the purpose of a DMCA

subpoena is to identify a copyright infringer." (alteration in original)); 17 U.S.C. § 512(h) (titled "Subpoena to identify infringer").  The DMCA Notice of Infringement sent to GoDaddy by Tamaris makes the copyright infringement issue abundantly clear.  It specifically states that "[i]t has been brought to Tamaris's attention that the [domains identified in the DMCA Subpoena, including casinoestelar.com and powerbet.win,] are utilizing unauthorized copies of legitimate Tamaris gaming software with insignificant alterations." Exhibit B, at 4.  Gaming software is entitled to copyright protection, and thus, the domains' unauthorized use constitutes copyright infringement.  *See Banilla Games, Inc. v. Hines*, Action No. 2:22cv212, 2022 WL 17085953, at *3 (E.D. Va. Oct. 31, 2022) (recognizing that gaming software can be entitled to copyright protection), *R&R adopted*, 2022 WL 17085953 (E.D. Va. Nov. 18, 2022); *Snail Games USA Inc. v. Tencent Cloud LLC*, Case No. 2:22-cv-02009-CAS-SKx, 2022 WL 3575425, at *1, 5 (C.D. Cal. June 6, 2022) (recognizing that plaintiff owned copyrights associated with video game and denying motion to dismiss copyright claims).

Contrary to John Doe's speculation that the DMCA Subpoena was issued as a "phishing expedition" [sic], Tamaris intends to use the information identifying John Doe to pursue its copyright claims against John Doe as it has done in many other cases.  *See, e.g., Tamaris (Gibraltar) Ltd. v. Vasilyevich*, 24-cv-01146 (E.D. Va. March 10, 2025), Dkt. 22 (entering permanent injunction and damages award of $20 million for trademark counterfeiting and copyright infringement).

**D.  The Court Should Deny the Motion Because It Is Untimely.**

The deadline for compliance with the DMCA Subpoena was June 16, 2025.  *See* Exhibit A, at 2.  Pursuant to Rule 45(d)(2)(B), any objections to the subpoena "must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served."  Further, any

motion must be filed "timely."  Rule 45(d)(2)(C).  Absent objections, "[m]ost courts—including courts within the Fourth Circuit—consider a motion timely if it is filed before the return date of the subpoena."  *Williams v. Big Picture Loans, LLC*, 303 F. Supp. 3d 434, 442 (E.D. Va. 2018) (alteration omitted) (citing cases); *see also City of St. Petersburg v. Total Containment, Inc.*, MISC. Case No. 07–191, 2008 WL 1995298, at *2 (E.D. Pa. May 5, 2008) ("Ample authority exists holding that timeliness means within the specified compliance period . . . ." (citations omitted)); 9 *Moore's Federal Practice–Civil* § 45.50 (2025) ("Because Rule 45 does not provide any specific time period for bringing a motion to quash or modify, courts have required that the motion be made before the date specified by the subpoena for compliance.").

In this case, John Doe did not object to the DMCA Subpoena in any sense, and, as a consequence, any such objections should be considered waived.  *In re Motorsports Merch. Antitrust Litig.*, 186 F.R.D. 344, 349 (W.D. Va. 1999) ("Ordinarily, the failure to make timely objection to a subpoena duces tecum pursuant to this rule will waive any objection.").  Moreover, as discussed above, John Doe did not respond before the return date, or contact Counsel for Tamaris before filing his Motion. John Doe filed its Motion on August 1, 2025—nearly two months after the return date.  *See* ECF No. 4.  Therefore, the Court should deny the Motion as untimely.  *See id.*

* * *

## IV.    CONCLUSION

For the foregoing reasons, the Court should deny John Doe's Motion and grant such further relief as this Court deems proper.

Dated: August 15, 2025

Respectfully submitted,

*/s/ David E. Weslow*
David E. Weslow
**WILEY REIN LLP**
2050 M Street NW
Washington, DC 20036
Tel. (202)719-7000
dweslow@wiley.law

*Counsel for Tamaris (Gibraltar) Limited*

## <u>CERTIFICATE OF SERVICE</u>

On August 15, 2025, I electronically filed the foregoing Opposition to Motion to Quash DMCA Subpoena to GoDaddy.com, LLC with the Clerk of Court using the CM/ECF system, which served a true and correct copy on all counsel of record.


*/s/ David E. Weslow*
David E. Weslow
**Wiley Rein LLP**
2050 M Street, NW
Washington, DC  20036
Tel: (202) 719-7000
dweslow@wiley.law

*Counsel for Tamaris (Gibraltar) Limited*