IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In re DMCA Subpoena to GoDaddy.com, LLC | * |
| | * |
| JOHN DOE, | * |
| Movant, | * |
| v. | * |
| TAMARIS (GIBRALTAR) LIMITED, | * |
| Respondent. | * |
| | * |

Case No. 25-mc-00319

\*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION**

Pending before the Court is John Doe's Motion to Quash DMCA Subpoena to Godaddy.com, LLC ("Motion"). ECF No. 4. This case was referred to me for resolution of the Motion. ECF No. 8. Having considered the submissions of the parties (ECF Nos. 4, 7 & 9), I find that a hearing is unnecessary. *See* Loc. R. 105.6. For the following reasons, John Doe's ("Movant") Motion will be denied.

**I.    BACKGROUND**

Tamaris (Gibraltar) Limited ("Respondent"), operating as Pragmatic Play International LTD, owns all rights in the copyrighted material related to "Pragmatic Play," including gaming software, websites, livestreams, and related content. ECF No. 1-1. On June 2, 2025, Respondent requested issuance of a Digital Millennium Copyright Act ("DMCA") subpoena to GoDaddy.com, LLC ("GoDaddy"), pursuant to 17 U.S.C. § 512(h). ECF No. 1. The subpoena seeks identifying information of alleged copyright infringers, including the hosts, origin Internet

Protocol addresses, names, contact information, payment methods, and email addresses associated with the operators of over 100 internet domains, including the domains "casinoestelar.com" and "powerbet.win," both of which are owned and operated by Movant. ECF Nos. 1-2 & 4. In its request, Respondent alleges that the owners and operators of these domains have infringed copyrights owned by Respondent. ECF No. 1. Because Respondent's request complied with the § 512(h) requirements, the Clerk of Court issued the proposed subpoena. ECF No. 2. On June 3, 2025, Respondent served GoDaddy via email and requested electronic production of the identifying information by June 16, 2025. ECF Nos. 2 & 7-1. GoDaddy did not notify Movant of the subpoena until July 25, 2025. ECF No. 9. Movant filed his Motion on August 1, 2025. ECF No. 4. Respondent's opposition and Movant's reply were filed thereafter. ECF Nos. 7 & 9. The Motion is now ripe for decision.

## II.    LEGAL STANDARD

Pursuant to the DMCA and upon request from a copyright owner, the clerk of any United States district court may "issue a subpoena to a service provider for identification of an alleged infringer in accordance with [§ 512(h)]." 17 U.S.C. § 512(h)(1). So long as the request complies with the requirements set forth in § 512(h), "the clerk shall expeditiously issue and sign the proposed subpoena and return it to the requestor for delivery to the service provider." 17 U.S.C. § 512(h)(4). This process allows copyright holders to obtain identifying information of alleged infringers directly, without filing a lawsuit. *See In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d 868, 877 (N.D. Cal. 2022).

Unless otherwise provided by § 512 or the applicable rules of the court, "the procedure for issuance and delivery of the subpoena, and the remedies for noncompliance with the subpoena, shall be governed to the greatest extent practicable by those provisions of the Federal

Rules of Civil Procedure governing the issuance, service, and enforcement of a subpoena duces tecum." 17 U.S.C. § 512(h)(6). "Rule 45 in particular governs the enforcement of a subpoena duces tecum and provides for a motion to compel and for a motion to quash, as well as remedies available for both types of motions." *Cognosphere Pte. Ltd. v. X Corp.*, No. 23-80294-PHK, 2024 U.S. Dist. LEXIS 168544, at *5 (N.D. Cal. Sep. 18, 2024). Section 512(h) therefore incorporates Rule 45 for purposes of evaluating a motion to quash a DMCA subpoena. Rule 45(d)(3)(A) provides:

> When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
>
> (i)    fails to allow a reasonable time to comply;
> (ii)   requires a person to comply beyond the geographical limits specified in Rule 45(c);
> (iii)  requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
> (iv)   subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A).

The moving party "bears the heavy burden to persuade the court that a subpoena should be quashed." *Strike 3 Holdings, LLC v. Doe*, No. 23-00445-JRR, 2023 U.S. Dist. LEXIS 78910, at *5-6 (D. Md. May 4, 2023) (citing *Virginia Dep't of Corr. v. Jordan*, 921 F.3d 180 (4th Cir. 2019)). The decision to grant or deny a motion to quash is discretionary, and the ultimate decision "about the reasonableness and burden of a subpoena [is] left to the sound discretion of the court." *In re DMCA Section 512(h) Subpoena to YouTube (Google, Inc.)*, 581 F. Supp. 3d 509, 515 (S.D.N.Y. 2022).

## III.    DISCUSSION

The parties dispute: (1) whether Local Rule 104.7 applies to this issue; (2) whether the Motion was timely; (3) whether the subpoena issued exceeds the scope of § 512(h); and (4)

whether the subpoena should be quashed pursuant to Rule 45(d)(3)(A)(iii) because it seeks matter protected by the First Amendment. ECF Nos. 4, 7 & 9. The Court will address each issue below.

### A. Local Rule 104.7

Respondent argues the Motion should be denied because Movant failed to confer with Respondent's counsel prior to filing a discovery motion, as required by Local Rule 104.7. ECF No. 7; Loc. R. 104.7. Movant claims Local Rule 104.7 is inapplicable because it applies only to discovery disputes between parties to litigation. ECF No. 9. The cases cited by Respondent on this issue relate to discovery between parties when a lawsuit is ongoing. ECF No. 7. This is not the case here, as a DMCA subpoena is a prelitigation subpoena designed to facilitate disclosure of identifying information when there is no pending lawsuit. *See In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d at 875; *Recording Indus. Ass'n of Am. v. Univ. of N.C. at Chapel Hill*, 367 F. Supp. 2d 945, 958 (M.D.N.C. 2005). The Court is unpersuaded that Movant's failure to comply with Local Rule 104.7 is a basis to deny the Motion.

### B. Timeliness of Movant's Motion

The quashing or modifying of a DMCA subpoena is governed by Rule 45, which requires that a motion to quash be "timely." *See* Fed. R. Civ. P. 45(d)(3)(A); *In re DMCA § 512(h) Subpoena to Twitter, Inc.*, 608 F. Supp. 3d at n.2. A motion to quash is generally considered timely when the movant files the motion prior to the subpoena's return date. *See, e.g., Carter v. Archdale Police Dep't*, No. 1:13CV613, 2014 U.S. Dist. LEXIS 61265, at *10 (M.D.N.C. May 2, 2014). However, when a movant receives delayed notification of a DMCA subpoena and consequently files an untimely motion to quash, the untimely motion may still be considered if good cause exists to excuse the delay. *See In re DMCA Section 512(h) Subpoena to YouTube*, 581

F. Supp. 3d at 516-17 (considering the merits of movant's untimely motion to quash because movant received notice of the subpoena five days before the return date, promptly sought counsel, and the delay did not result in prejudice).

Here, Movant claims the Court should consider the merits of his Motion because it was timely filed. ECF No. 9. Respondent argues the Motion is untimely because it was filed approximately two months after the subpoena return date and did not comply with Rule 45(d)(2)(B)'s requirement that objections to the subpoena be "served before the earlier of the time specified for compliance or 14 days after the subpoena is served." ECF No. 7 at 11 (citing Fed. R. Civ. P. 45(d)(2)(B)).

While the Motion is untimely, good cause exists to consider the merits. GoDaddy was required to produce the subpoenaed information by June 16, 2025. ECF No. 2. While GoDaddy was served with the subpoena on June 3, 2025, there is no indication the Movant was notified of the subpoena at that time. ECF No. 7-1. Movant contends GoDaddy only notified him of the subpoena on July 25, 2025. ECF No. 9. Movant filed his Motion on August 1, 2025. ECF No. 4. While the Motion was filed over a month after its return date, it was also filed within five days of when Movant learned of the subpoena. *Id.* There is nothing to suggest the Respondent has been prejudiced because of the delay. Respondent's reliance on Rule 45(d)(2)(B) also lacks merit, as this provision is directed to "[a] person commanded to produce documents," which is GoDaddy in this case. Fed. R. Civ. P. 45(d)(2)(B); *see also In Re DMCA Subpoena to Reddit, Inc.*, 441 F. Supp. 3d 875, 887 (N.D. Cal. 2020) (rejecting respondent's argument that movant untimely opposed a DMCA subpoena because the "deadline for objections under Rule 45 . . . applies only to the person commanded to respond to the subpoena").

The Court finds good cause to excuse the Motion's untimeliness.

**C. Scope of § 512(h)**

Movant argues that Respondent's subpoena seeks information beyond what is permitted under § 512(h). ECF No. 9. As explained below, this argument is unfounded.

**1. Legal Standard**

The title of § 512(h)—"Subpoena to identify infringer"—describes its obvious purpose. 17 U.S.C. § 512(h); *see also Signature Mgmt. Team, LLC v. Automattic, Inc.*, 941 F. Supp. 2d 1145, 1152 (N.D. Cal. 2013). Through § 512(h), the DMCA allows copyright holders to "identify copyright infringers who use the services of an internet service provider." *Cognosphere*, 2024 U.S. Dist. LEXIS 168544, at *4. To obtain disclosure of infringer identities, § 512(h) requires the requestor to submit the following: (1) a copy of a notification satisfying the requirements of § 512(c)(3)(A); (2) a proposed subpoena; and (3) a sworn declaration certifying the subpoena is sought to identify alleged infringers and the information obtained will be used only to protect a copyright holder's rights. *See* 17 U.S.C. § 512(h)(2).

Pursuant to § 512(c)(3)(A), the requesting party must "[identify] [] the copyrighted work claimed to have been infringed[,] . . . the material that is claimed to be infringing or to be the subject of infringing activity[,] . . . and information reasonably sufficient to permit the service provider to locate the material . . . and contact the complaining party." 17 U.S.C. § 512(c)(3)(A)(ii), (iii), and (iv). Neither supporting evidence nor an individualized showing of infringement is required to satisfy the notification requirement and obtain a DMCA subpoena. *See* 17 U.S.C. § 512(c)(3)(A)(i), (v), and (vi) (requiring only a "good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law[,]" a statement that the "information in the notification is accurate," and a signature and

6

statement under the penalty of perjury of the person authorized to act on behalf of the copyright owner).

So long as the requirements set forth in § 512(h) are satisfied, "the clerk shall expeditiously issue and sign the proposed subpoena and return it to the requestor for delivery to the service provider." 17 U.S.C. § 512(h)(4). Notably, the DMCA places no limit on the number of identities a requestor may seek to reveal. *See* 17 U.S.C. § 512(h).

## 2.  Analysis

Movant argues the subpoena exceeds the scope of § 512(h) because Respondent is engaged in a "mass unmasking" of over 100 domains—only two of which belong to Movant— "without an individualized showing of infringement." ECF No. 9. Respondent claims that all domains listed in the subpoena, including the domains owned by Movant, are reproducing its copyright-protected material. ECF No. 1-1.

In its request for the subpoena, Respondent complied with § 512(h) requirements, including notification to GoDaddy identifying Movant's domains as among those infringing on Respondent's copyrighted material. ECF No. 1. As required by § 512(c)(3)(A), Respondent's notification to GoDaddy identified both the copyrighted work and the infringing material.[1] The notification also attached an exhibit listing the "Infringing Sites," which includes Movant's two internet domains. ECF No. 1-1. As an alleged infringer, Movant's ownership of only two domains listed in the subpoena is immaterial. Respondent intends to use the identifying

---

[1] Respondent notified GoDaddy of the following: "Tamaris and its related companies *own all rights in the copyright protected . . . software code associated with the PragmaticPlay gaming software applications, websites, and livestreams* . . . the *Infringing Sites are utilizing unauthorized copies of legitimate Tamaris gaming software with insignificant alterations,* including counterfeit uses of Tamaris's trademarks." ECF No. 1-1 (emphasis added).

information obtained through the subpoena to pursue copyright infringement actions against all of the domain owners, including Movant. ECF No. 7.

Because the DMCA does not require an individualized showing of infringement or the submission of evidence supporting an infringement allegation, Respondent's notification was sufficient and is well within the scope of § 512(h).

### D. The First Amendment

Movant next argues that the subpoena must be quashed because enforcement would violate the First Amendment. ECF No. 9. He claims that Respondent's need for discovery does not outweigh his First Amendment interest in anonymous speech. *Id.* Respondent contends that Movant's identifying information is not protected by the First Amendment and his Motion should be denied because the subpoena does not require disclosure of "protected matter" within the meaning of Rule 45. ECF No. 7.

Neither the Court's review of relevant case law nor the parties' filings reveal authoritative guidance on this issue. When determining whether a motion to quash a DMCA subpoena should be granted based on First Amendment grounds, courts across the country take varying but overlapping approaches to balancing an anonymous party's First Amendment interest with the need of a copyright holder to obtain identifying information.

### 1. The First Amendment's Applicability to DMCA Subpoenas

Courts disagree about the relevance of the First Amendment when evaluating a motion to quash a DMCA subpoena. The court in *In Re DMCA Subpoena to Reddit, Inc.*, for example, declined to adopt a magistrate judge's recommendation, which denied a motion to quash a DMCA subpoena and "framed the issue as a matter of First Amendment rights for anonymous online speech." 441 F. Supp. 3d at 879-80. According to the court, the First Amendment analysis

was unnecessary because copyright law incorporates First Amendment protections through the doctrine of fair use. *Id.* at 882. Because the legal standards for revealing anonymous speakers' identities are unsettled and undeveloped, the test employed by the magistrate judge was "created in a context that did not involve the key elements of copyright or the DMCA" and was therefore erroneous. *Id.* Rather than "tack[ling] broad online speech issues," the court determined that a fair use inquiry was better suited to evaluate whether a DMCA subpoena should be quashed. *Id.* at 883.

However, a court within the same district later evaluated whether speech alleged to be copyright infringement, and which was subject to a DMCA subpoena, was entitled to First Amendment scrutiny. *See Cognosphere*, 2024 U.S. Dist. LEXIS 168544, at *7-9. The Court found a consensus among courts that First Amendment objections may be properly raised in a motion to quash a DMCA subpoena. *See id.* at *7-8 (but acknowledging that some courts question whether DMCA subpoenas implicate the First Amendment because copyright infringement is unprotected speech); *see also Signature Mgmt. Team, LLC*, 941 F. Supp. 2d at 1153 (collecting cases) (holding that "in accordance with the practice of courts applying the DMCA, the Court concludes that constitutional objections to a DMCA subpoena may properly be raised in a motion to quash").

### 2. First Amendment Speech as "Protected Material"

Pursuant to Rule 45, a court "must quash or modify a subpoena that . . . requires disclosure of privileged or other protected matter, if no exception or waiver applies." Fed. R. Civ. P. 45(d)(3)(A)(iii). A protected matter includes material covered by First Amendment protections, such as the identifying information of an anonymous speaker. *See Baugher v. GoDaddy.com LLC*, No. 19-00034-PHX-JJT, 2021 U.S. Dist. LEXIS 204449, at *4 (D. Ariz. Oct. 22, 2021).

9

The ability to remain anonymous while engaging in protected speech is a well-established First Amendment principle. *See McIntyre v. Ohio Elections Comm'n*, 514 U.S. 334, 342 (1995); *Peterson v. Nat'l Telcoms. & Info. Admin.*, 478 F.3d 626, 632 (4th Cir. 2007). As a "particularly effective forum for the dissemination of anonymous speech," this protection extends to speech on the internet. *Sony Music Ent. Inc. v. Doe*, 326 F. Supp. 2d 556, 562 (S.D.N.Y. 2004). But "to the extent that anonymity is used to mask copyright infringement or to facilitate such infringement by other persons, it is unprotected by the First Amendment." *Arista Records LLC v. Doe*, 604 F.3d 110, 118 (2d Cir. 2010). Nonetheless, "there is some level of First Amendment protection that should be afforded to anonymous expression on the Internet, even though the degree of protection is minimal where alleged copyright infringement is the expression at issue." *Signature Mgmt. Team, LLC*, 941 F. Supp. 2d at 1154 (quoting *In re Verizon Internet Servs., Inc.*, 257 F. Supp. 2d 244, 260 (D.D.C. 2003)).

This framework raises two questions: "(1) whether a person who uses the Internet to download or distribute copyrighted [gaming software] without permission is engaging in the exercise of speech; and (2) if so, whether such a person's identity is protected from disclosure by the First Amendment." *Sony Music Ent. Inc.*, 326 F. Supp. 2d at 562.

### 3. Was Movant Engaged in First Amendment "Speech?"

Whether conduct constitutes speech under the First Amendment is a threshold matter in cases involving anonymous alleged copyright infringers. *See Sony Music Ent. Inc.*, 326 F. Supp. 2d at 564. A touchstone for this analysis is whether the alleged infringer is engaging in "true expression" and "seeking to communicate a thought or convey an idea." *Id.* In *Sony*, the court considered whether the use of file copying networks to download and distribute copyrighted sound recordings, without the owner's permission, is an exercise of speech. *Id.* The court

10

reasoned that unlike many parties in First Amendment cases, a party engaged in file sharing is not engaged in true expression. *Id.* Instead of communicating thoughts and ideas, the party's primary objective is to obtain music without paying for it. *Id.* The court noted, however, that by sharing the copyrighted material, the party may be "making a statement" or "expressing himself or herself through the music selected and made available to others." *Id.* Accordingly, the *Sony* court determined the file sharing could conceivably be considered expression, but noted it was entitled to only limited First Amendment protection. *Id.*

As in *Sony*, the Movant here is allegedly engaged in the unauthorized use of Respondent's copyrighted material. ECF 1-1. The Movant implies that his conduct is expressive speech. ECF No. 4 at 3 ("Disclosure of Movant's identity risks serious harm to privacy protections, particularly if the domains are used for expressive conduct."). However, Movant did not explicitly state as much and neither party has explained how Movant's use of Respondent's copyrighted gaming software constitutes expressive conduct. It is possible, though unlikely, that Movant is anonymously expressing himself through his reproduction of the gaming software or related copyrighted content. The Court will therefore assume, for the sake of argument, that Movant is engaged in speech. Even so, such activity is not political or religious "core" First Amendment speech and is thus entitled to minimal First Amendment protection. *See Sony Music Ent. Inc.*, 326 F. Supp. 2d at 564.

### 4. Does the First Amendment Protect Movant's Identity from Disclosure?

After finding that conduct is "speech," courts next determine whether the moving party's identity is protected from disclosure under the First Amendment. *See Sony Music Ent. Inc.*, 326 F. Supp. 2d at 563-65 (noting that "civil subpoenas seeking information regarding anonymous individuals raise First Amendment concerns"). While there is no uniform approach for

determining whether a subpoena should be quashed pursuant to the First Amendment, courts considering both DMCA and Rule 45 subpoenas primarily employ one of two approaches: a two-step analysis considering whether a prima facie case of infringement has been established and a balancing of the parties' interests; or, a five-factor balancing test weighing the strength of the petitioner's prima facie claim, the specificity of the discovery request, the absence of alternative means to obtain the information, the petitioner's need for the information, and the objecting party's expectation of privacy. *See id.* at 564-65; *Cognosphere*, 2024 U.S. Dist. LEXIS 168544, at *9.

### a.  The Two-Step Analysis

Under the two-step analysis, "the party seeking the disclosure must [first] demonstrate a prima facie case on the merits of its underlying claim" of copyright infringement. *See Cognosphere*, 2024 U.S. Dist. LEXIS 168544, at *9 (internal citations omitted); *see also RoyaltyStat, LLC v. IntangibleSpring Corp.*, No. 15-3940-PX, 2018 U.S. Dist. LEXIS 4791, at *4-5 (D. Md. Jan. 10, 2018) (a prima facie case for copyright infringement requires "a plaintiff [to] allege facts establishing that (1) plaintiff owned copyrighted material and (2) the infringer copied protected elements of that material"). Next, the court must "balance[] the need for the discovery against the First Amendment interest at stake." *Cognosphere*, 2024 U.S. Dist. LEXIS 168544, at *9 (denying a motion to quash a DMCA subpoena after applying the two-step First Amendment analysis). While the language of this inquiry varies among courts, the underlying principles remain the same. *See, e.g.*, *Art of Living Found. v. Does 1-10*, No. 10-5022-LHK, 2011 U.S. Dist. LEXIS 129836, at *21 (N.D. Cal. Nov. 9, 2011) (requiring production of "competent evidence supporting a finding of each fact that is essential to a given cause of action," and, "if the plaintiff makes a sufficient evidentiary showing," balancing the "magnitude

of the harms that would be caused to the competing interests by a ruling in favor of the plaintiff and by a ruling in favor of the defendant"); *see also Baugher*, 2021 U.S. Dist. LEXIS 204449, at *7 (stating that the *Art of Living Foundation* standard "put more directly . . . [requires] 'a prima facie case of copyright infringement' and [] 'a balancing of harms'").

In balancing the need for disclosure with the First Amendment interests at stake, some courts rely on four factors:

> (A) whether the subpoena was issued in good faith; (B) whether the information sought relates to a core claim or defense; (C) [whether] the identifying information is directly and materially relevant to that claim or defense; and (D) whether information sought after is sufficient to establish or to disprove that claim or defense is unavailable from any other source.

*Cognosphere*, 2024 U.S. Dist. LEXIS 168544, at *19. Other courts do not consider explicit factors but instead balance the harms and interests raised by the parties. *See Signature Mgmt. Team, LLC*, 941 F. Supp. 2d at 1156-57 (balancing the movant's claim that disclosure of his identity will lead to retaliation and chilled speech with respondent's need for disclosure to facilitate a copyright infringement action).

If a court finds a prima facie case of copyright infringement has been established and the need for disclosure outweighs a moving party's First Amendment interest, then a court applying the two-step inquiry may deny a motion to quash a DMCA subpoena.

### b.  Five-Factor Balancing

The five-factor balancing test was introduced in *Sony* and was later recognized by the Second Circuit. *See Arista Records LLC*, 604 F.3d at 119 (agreeing that the *Sony* factors "constitute[] an appropriate general standard for determining whether a motion to quash, to preserve the objecting party's anonymity, should be granted"). Within the Fourth Circuit, district courts have referenced and applied the *Sony* factors when considering a motion to quash. *See,*

13

*e.g.*, *Arista Records, LLC v. Doe*, 254 F.R.D. 480, 482 (E.D.N.C. 2008) (stating the *Sony* factors should be considered when determining whether a party's identity is protected from disclosure under the First Amendment); *see also LHF Prods. v. Doe*, No. 17-151-MR, 2017 U.S. Dist. LEXIS 106567, at *3 (W.D.N.C. July 11, 2017) (citing the *Sony* factors as a means to determine whether an anonymous party's identity should be shielded from disclosure through a Rule 45 subpoena). While these cases concerned subpoenas issued under Rule 45, courts also apply the *Sony* factors when determining whether to quash a DMCA subpoena. *See Signature Mgmt. Team, LLC*, 941 F. Supp. 2d at 1158.

> Under the *Sony* five-factor analysis, courts consider the following:

> (1) [the] concrete[ness of the plaintiff's] showing of a prima facie claim of actionable harm, . . . (2) [the] specificity of the discovery request, . . . (3) the absence of alternative means to obtain the subpoenaed information, . . . (4) [the] need for the subpoenaed information to advance the claim, . . . and (5) the [objecting] party's expectation of privacy.

*Arista Records LLC*, 604 F.3d at 117 (quoting *Sony Music Ent. Inc.,* 326 F. Supp. 2d at 565-67). Notably, these factors parallel and overlap with the two-step inquiry. When these factors weigh in favor of disclosure, a court may properly deny a motion to quash.

### c. Choosing the Proper Standard

"In choosing the proper standard to apply, the district court should focus on the 'nature' of the speech" at issue. *Art of Living Found.*, 2011 U.S. Dist. LEXIS 129836, at *13 (collecting cases). Speech concerning a matter of public interest—like political and religious speech—is considered "core" First Amendment speech and requires application of a more rigorous standard than commercial speech. *Id.*; *Cognosphere*, 2024 U.S. Dist. LEXIS 168544, at *8. The two-step analysis has been employed by some courts in cases concerning "core" speech. *See Art of Living Found.*, 2011 U.S. Dist. LEXIS 129836, at *13-14 (explaining that the two-step analysis is the

14

appropriate standard to be applied in core First Amendment cases); *see also Baugher*, 2021 U.S. Dist. LEXIS 204449, at *6 (applying the two-step analysis where the speech involved the unauthorized posting of a copyrighted book proposal and manuscript to encourage public discourse and criticism of the text).

But when the speech at issue is the distribution of illegally downloaded copyrighted material primarily for entertainment purposes, the First Amendment is barely implicated, and a less rigorous test may be applied. *See Art of Living Found*., 2011 U.S. Dist. LEXIS 129836, at *14; *see also Signature Mgmt. Team, LLC*, 941 F. Supp. 2d at 1154 (explaining *Sony* "involved copying music files without 'engaging in true expression'" so the "court concluded that the 'conduct qualifie[d] as speech, but only to a degree' and thus deserved only protection that 'is limited and subject to other considerations.'"). In such cases, courts balance the *Sony* factors rather than applying the two-step inquiry.

For the purpose of this Motion, the Court considers Movant to be engaged in speech but finds that the nature of his speech is commercial. There is nothing in the record that Movant was engaged in "core" First Amendment speech. Accordingly, the Court will apply the *Sony* factors to determine whether Movant's minimal First Amendment interest outweighs Respondent's need for disclosure of Movant's identifying information. It does not.[2]

### d.  Application of the *Sony* Factors

The balancing of the following factors clearly favors the Respondent: (1) the concreteness of Respondent's showing of a prima facie case of copyright infringement; (2) the specificity of Respondent's request; (3) the absence of alternative means to obtain the identifying

---

[2] The Court would have reached the same conclusion through the two-step inquiry.

information sought; (4) the need for the information to advance Respondent's claims; and (5) the Movant's expectation of privacy. *See Sony Music Ent. Inc.,* 326 F. Supp. 2d at 564-65.

First, Movant claims Respondent failed to establish a prima facie case for copyright infringement. ECF No. 9. Movant does not contest Respondent's ownership of the copyrighted material but instead argues that there is insufficient evidence of infringement. ECF No. 9. In its request for issuance of the DMCA subpoena, Respondent's counsel certified that its notification to GoDaddy identifying Movant's domains as infringing sites was true and accurate. ECF No. 1-3. Movant nonetheless contends that Petitioner was required to "provide [an] individualized explanation or evidence as to how Movant's Domains are infringing any copyright-protected content." ECF No. 9 at 5. In support of this contention, Movant relies on two cases, neither of which support imposing such a high burden on respondents in DMCA subpoena cases.

Movant cites *Cognosphere*, where the party seeking a DMCA subpoena submitted both a declaration asserting that account holders posted infringing material and "evidence that the accused account holders have publicly displayed copyrighted materials" relating to a video gaming service. *See Cognosphere*, 2024 U.S. Dist. LEXIS 168544, at *17. The *Cognosphere* court only considered the submitted evidence and did not establish that the submission of evidence is required for the issuance of a DMCA subpoena. *See id.* Movant also cites *Pac. Century Int'l, Ltd. v. Does 1-101*, 11-2533-DMR, 2011 U.S. Dist. LEXIS 124518, at *6 (N.D. Cal. Oct. 27, 2011) where the plaintiff moved for expedited discovery on the identity of copyright infringers *and* the ISP subscribers over whose internet connection the protected work was downloaded (the latter of which would not be proper defendants). ECF No. 9. Unlike in *Pac*, Respondent's subpoena seeks to identify only domains engaged in copyright infringement, the operators of which would be proper defendants. Notably, Movant makes no attempt to identify

16

any parts of Respondent's subpoena that seek information beyond the identification of potential defendants.

There is no support for Movant's claim that Respondent cannot establish a prima facie case of copyright infringement without an individualized showing of infringement for each domain listed in the DMCA subpoena. The law requires only two things: a valid copyright and unauthorized use of the copyrighted material. *See RoyaltyStat*, 2018 U.S. Dist. LEXIS 4791, at *4-5. Within the DMCA subpoena context, requiring an individualized showing and supporting evidence of infringement would place an enormously high burden on Respondent, who has alleged over 100 domains are infringing on its copyrights. ECF Nos. 1 & 9. Respondent claims that its gaming software is copyrighted and asserts that Movant used unauthorized and protected copies of this software. ECF No. 7. Movant does not dispute either of these facts. *See Signature Mgmt. Team LLC*, 941 F. Supp. 2d at 1157 (finding a prima facie case of infringement in part because the party seeking to quash a DMCA subpoena did not dispute that it posted copyrighted material); ECF No. 4 at 3 (Movant argues only that "*[t]here is no individualized showing* that Movant's domain infringes on any copyrighted material owned by Tamaris (Gibraltar) Limited") (emphasis added). Although the lack of supporting evidence may somewhat weaken the Respondent's prima facie case, Respondent has nevertheless satisfied the elements of a prima facie case of infringement. This factor favors disclosure.

Second, the subpoena requests several types of identifying information, all of which are "sufficiently specific to establish a reasonable likelihood that the discovery request would lead to identifying information that would make possible service upon particular defendants who could be sued in federal court." *Sony Music Ent. Inc.*, 326 F. Supp. 2d at 566; ECF No. 2. The identifying information requested in the subpoena will enable Respondent to bring suit and serve

17

process on the appropriate defendants. *Sony Music Ent. Inc*., 326 F. Supp. 2d at 566. Movant has not claimed the information sought is unlikely to lead to his identification, and the Court therefore finds the subpoenaed information is sufficiently specific to reveal the identities of the infringing domains. This factor favors disclosure.

Third, Respondent claims that without the information requested in the subpoena, it has no alternative means of obtaining the identifying information. ECF No. 7. This would leave Respondent with no means of recourse against the infringing domains. While Movant asserts this factor does not favor disclosure, Movant fails to provide any alternative means through which Respondent could attempt to obtain Movant's identifying information. ECF No. 9. The DMCA process is the Respondent's only means to identify copyright infringers. This factor favors disclosure.

Fourth, Respondent's counsel has certified the information obtained through the subpoena is necessary to protect Respondent's rights and that it will exclusively be used to take appropriate legal action. ECF Nos. 1-3 & 7. The subpoenaed information is central to Respondent's claim, as its copyright claim cannot proceed without it. *See Cognosphere*, 2024 U.S. Dist. LEXIS 168544, at *21 (finding the need for disclosure outweighed First Amendment interests because the identifying information requested in a DMCA subpoena was necessary to pursue a copyright infringement claim and unavailable through alternative sources). Respondent's need for Movant's identifying information to protect its own legal interest is clear. This factor favors disclosure.

Fifth, Movant's limited expectation of privacy in his anonymous use of Respondent's gaming software also favors disclosure. Even assuming that Movant has a privacy interest in remaining anonymous, any "privacy interest that a customer may have in the contact information

associated with an IP address is minimal at best . . . [and] where the free speech at issue is alleged copyright infringement[,] courts have routinely held that a defendant's First Amendment privacy interests are exceedingly small." *Patrick Collins, Inc. v. Doe*, No. 8:12-cv-00095, 2012 U.S. Dist. LEXIS 48420 at *27 (D. Md. Apr. 4, 2012) (citing *Third Degree Films, Inc. v. Doe*, No. 11-3007-DKC, 2012 U.S. Dist. LEXIS 25400, at *7 (D. Md. Feb. 28, 2012)). Moreover, there is "no similar expectation of privacy for copyright infringement." *Signature Mgmt. Team LLC*, 941 F. Supp. 2d at 1158. The Movant may not "use the First Amendment to encroach upon the intellectual property rights of others[.]" *Sony Music Ent. Inc.,* 326 F. Supp. 2d at 563. This factor favors disclosure. In addition, any legitimate privacy interest Movant retains will be minimally affected by enforcing the subpoena, as the subpoena is limited to information necessary for vindication of Respondent's rights. *See Signature Mgmt. Team, LLC*, 941 F. Supp. 2d at 1158.

All of the *Sony* factors favor disclosure of Movant's identifying information. Movant's identifying information is not "protected matter" under Rule 45(d)(3)(A)(iii). Accordingly, Movant's Motion is denied.

## IV.    CONCLUSION

For the reasons set forth above, John Doe's Motion to Quash DMCA Subpoena to GoDaddy.com, LLC (ECF No. 4) is **DENIED**. An accompanying Order follows.


December 11, 2025                                              /s/
Date                                                    Timothy J. Sullivan
                                                        Chief United States Magistrate Judge

19